The last case for argument this morning is William Manery v. Jason Lee. Mr. Overholt. Good morning. I'm Tony Overholt representing Jason Lee. The decision denying qualified immunity to Lt. Lee should be reversed because the District Court applied the wrong legal standard in assessing the Fourth Amendment question as to when and whether Lt. Lee was entitled to fire his weapon. The District Court established quite a few facts in my client's favor that supported a decision that he did not violate the Fourth Amendment. Mr. Manery was wanted on a felony warrant for aggravated assault with a vehicle, evading arrest, and violating probation. In addition, Lt. Lee reasonably believed that Manery was armed with a handgun and he had previously threatened to die in a law enforcement encounter with police. In addition, in moments before the shooting occurred, Manery demonstrated his active resistance to arrest by fleeing police, crashing into a police car, backing into a curb, pulling forward, and then striking another police car. It was at that precise moment that Lt. Lee made the split-second decision to fire his weapon. The video shows that, in fact, he fired his gun just a second or two after Manery struck the second police car. The District Court correctly said that the key inquiry in this case was whether a reasonable jury could conclude that Lt. Lee believed Mr. Manery posed an immediate threat to Lt. Lee or to others. I don't dispute that. What is disputed in this case and what the District Court was incorrect about is its myopic focus on the precise moment when Lt. Lee fired. So, Mr. Overholt, let's assume that the white SUV, when it struck, it went to the curb and it struck the car in front of it, right? Let's assume, and I think the video kind of backs up, that it couldn't go anywhere. It was halted. It was blocked. Okay? Yes. And by that time, Officer Lee, or W.W. Lee, was off to the side of the car. Yes. Right? So, if we assume that the car could not move any, that it could not move any more further up, right, it could, I guess, move back to the curb, would you still believe that Officer Bannery had the, or a reasonable officer in Officer Bannery's shoes would have fired the shots from the side of the car into the car? Absolutely. And that's exactly the fact that we assumed for purposes of this appeal. We assumed that the car, as the District Court found, was stopped and that Lt. Lee was off to the side when he fired. The problem with the District Court's opinion is that it ignored admonitions from this court in Sand Zone v. Gray, in Brummett v. Smith, in Johnson v. Jones, cases all of which say that a law enforcement officer forced to make a split-second decision must be given the benefit of the doubt and is allowed to take action, in this case, to fire a weapon, even though, in this case, Mr. Bannery came to a stop. For example, in— Would a reasonable jury or fact-finder come to the conclusion that once the car came to a stop, that the car, at least, did not—no longer posed a serious threat to Officer Lee or those around him? A jury may conclude that, but the problem is, under the Fourth Amendment, as this court explained in cases like Brummett, an officer cannot process information that quickly. For example, in— But with regard to how soon, whether or not there was enough time, because it seemed like, at least from the video, there was some time, right? There was a second or two, yes. So some time between the time that the officer moved over and then shot. The—and I take your point that things were happening and that there was a lot going on, but as to whether or not, by that time, there was enough time that elapsed between the time that the white car had stopped and the shots were fired, whether or not there was sufficient time for a reasonable officer to consider that threat to have been eliminated, isn't that a factual finding that's better left for a jury? No, for this reason. One, qualified immunity is a question as a matter of law, as this court explained in Brummett. Well, I realize it's a matter of law, but I'm looking at the predicate facts, right, that would go into that legal analysis. Well, let's look at the predicate facts. In the predicate facts, we know that Mannery was a felon fleeing on a warrant. We know he had threatened to die. Let me ask you this then. So let's take a hypothetical situation where there—I know here the dispatch said that he was armed, right? Let's say that the dispatcher had not conveyed that information, right? Okay. Would that change your analysis? No, because there was enough other information aside from the fact that you just identified. There was enough other information that would give him tentatively the ability in that circumstance to fire. Again, look at the cases like Sand Zone and Brummett, which say an officer cannot instantaneously process that kind of rapidly evolving situation, something the district court specifically said was present in this case. They specifically said there was a rapidly evolving, tense situation. And in this instance, he just didn't have that time. He knew all of these facts about Mannery. This was not just some random suspect. He knew a lot about Mr. Mannery, far more than the officer knew in Brummett, far more than the officer knew in Sand Zone v. Gray. He knew a lot. And that information all informs his question as to whether or not he can fire. And we have a case where an officer releases a dog actually after the suspect surrenders. And this court said that's permissible because there wasn't time to process. Was there any evidence? Because I couldn't find it. Was there any evidence that Officer Lee thought that Mr. Mannery was reaching for a gun or doing something that would indicate that he would threaten the officers with a gun? The only thing that's in the record that I can recall is at the very beginning of the encounter, when the jeep is still parked, he fidgeted around in his pockets. So we know that he was doing something then. I don't know whether he ultimately was just reaching for keys or what he was doing. But I think that is probably the only evidence that would have suggested to Lieutenant Lee he may have been reaching for a weapon. I don't recall anything else. I'm not sure why we're focusing on whether a reasonable jury could or could not conclude based on this evidentiary record whether this was an excessive use of force because this is a qualified immunity appeal. So we can skip that first question. Absolutely. And we should skip that first question in excessive force cases because invariably it entails discussions like the one that we're now having. What are the reasonable inferences and what are the underlying evidentiary facts? And we don't have to decide that. We shouldn't decide that on qualified immunity appeals. And district courts should not decide that in qualified immunity summary judgment motions. They should just skip over the first question as Pearson permits and advises as later Supreme Court cases advise the courts to do. I agree with you 100%. And focus on whether it would have been clear. It was clearly established such that it would have been clear to any reasonable officer that firing a gun in this situation, assuming that a jury could find this is excessive force, just assume the merits question, whether it was clearly established that firing a gun in this situation was unconstitutional. And there is no such case. Right. So let's just focus on the proper question here. And that was the concern that, at least for me, with the approach that was taken in the district court here. And it's a very common error. And I was, in my defense, I was trying to address Judge Lee's question. Understood. But B, yes, I agree with you. Understood. But that's what you should have led with. All right. Mr. Tate. May it please the Court, Brandon Tate for the acquittee, William Manry. All right. And if you could start with my first question, which is really the key question here. Let's assume everything in your favor. Assume that a reasonable jury could find that this was an excessive use of force. Is this constitutional violation clearly established such that any reasonable officer in Lieutenant Lee's position would have understood that firing his gun under these circumstances was unconstitutional and unlawful and a violation of your client's rights? Yes, Your Honor. To the Court's question, there are two cases. I'm looking for a case. Yeah. So that was with regards to the, I apologize, I have them written down a little out of order. That would be the Scott v. Edinburgh case and the estate of Starks v. Earhart A. Yart cases. These cases, and not only those cases, but also the general line of when there is no threat of imminent harm, deadly force of serious bodily injury or death, deadly force. Scott involved an officer who created the risk. He stepped in front of the moving car. So that's not analogous to this case. The Scott case would not have made it obvious to every reasonable officer that what Officer Lee's situation was precluded him from firing his gun. I agree that how the encounter occurred was different, but the premise and the law behind it, from our point of view, would be the same. The timing of the shooting was integral within that analysis. And the reason that we look at the Smith case as analogous is because it is. I'm sorry. We're talking about all these S cases.  So Starks is the one where the officer stepped in front of the car. Scott, I apologize. Yes. That would be the Scott v. Edinburgh case. So the officer stepped in front of the car, but he also, at the point in time that he shot, was not in the line of the vehicle. So the timing of the shooting was an integral fact within that analysis. With regards to, yes, Mr. Mannery, he didn't jump in front of Mr. Mannery's car. He didn't run after it. So I think that it could be inferred as to how Lieutenant Lee arrived within that, placing himself in the line. I think it could be inferred by a jury that he actually did do that. Again, this isn't a jury question. This is a legal question. Yes. Well, to an extent, it is a legal question, but I'm going to our motion to dismiss. It hinges on factual findings and to analyze the two cases together. Well, we have a video here. Correct. We have two videos. Correct. And the court properly found in viewing those videos that they were clearly intertwined with facts. The qualified immunity determination is intertwined with factual disputes concerning threats. Okay. It's a de novo review, so it doesn't matter what the court below found. The court doesn't make factual findings on summary judgment. Correct, Your Honor. They infer in favor of the plaintiff in doing their analysis.  It doesn't matter what the district court said. What matters is what the video shows. Correct, Your Honor. Right. And the video shows an officer standing on the side, and I do want to point out there are two periods of shootings. So we're not talking about one shot. We're talking about two separate instances of shooting. He had the first four to five shots, a pause, and then another round of four to five shots. Fraction of a second. It was a pause, Your Honor. The initial shot took a fraction of a second. The entire shooting didn't take a fraction of a second. The way we review the legal aspect, and I won't go into Brommett and Sanzone. I think we briefed that, and the court would rather on the clearly established right. We do not view Scott v. Edinburgh as narrowly tailoring the analysis to a situation where an officer stepped in front of a vehicle. Because at the point in time that he fired the shot, the vehicle wasn't traveling towards him. And same as in this situation. And again, there's lines of case law establishing that when there's no threat of imminent harm, of serious bodily injury, which has been conceded, when there's, to be able to use deadly force, it's clearly established that you need to have imminent threat of bodily harm or serious injury to yourself or others on scene. That's enough, we believe, for clearly established rights in this case. Because at the point in time where the car is hitting the vehicle and stopped, and an officer is standing to the side, all nine bullets went into the driver's side door, there's no reasonable officer that wouldn't know that's wrong. There's no threat face at the moment of the shooting. How the law is situated is that even if you have a right to use deadly force at one point in time, that doesn't give you the right to use it over and over and over. It's a moment by moment. And we would contend that that moment ended the moment that the car stopped and hit that vehicle. And that is clearly established because there was no imminent threat of serious bodily harm or death to any officer, to Lieutenant Lee, to any public figures. We do not, we would look at that as clearly established. Based on which case? The State of Starks v. Earhart, and we would use Scott. That's the case involving the officer who stepped in front of the vehicle and created the... Yeah, I might have flipped them when I was talking about them, Your Honor. So which one are you talking about? Well, I think the State of Starks does still. While he created it, at the time of the shooting, the vehicle wasn't traveling right at him. And Scott was the same way. These cases establish that if there's no imminent threat of serious bodily harm or death to the officer involved, regardless of how they arrived at that situation, it's clearly established an officer cannot shoot into the side of someone's vehicle. That's what we're asking the court to consider. But that's the Fourth Amendment principle stated at a high level of generality. You need to make it specific to this case and have a case that is analogous to this one that would have put any reasonable officer on notice that firing a gun under these circumstances was an excessive use of force. Your Honor, we would contend that both of those cases, as the district court found, do support that inference. I understand, may disagree, but we believe that those two cases do support the inference that would allow the jury to make a determination as to whether there was excessive force or not. I know I'm running low on time. We haven't talked much about the jurisdictional aspect throughout the argument, so I just want to briefly mention that there is the aspect of whether a qualified immunity has jurisdiction on appeal at the interlocutory stage. And that is when it's not a pure question of law, but when it's also intertwined with the facts. And here, the facts are intertwined with how the district court handled this. And Smith v. Finkley is clear. It was a Seventh Circuit 2021 case. Similar to this case, similar facts. As outlined in our brief, we would contend that the Smith v. Finkley case and the law regarding interlocutory authority over an excessive force qualified immunity claim, here the facts are too intertwined with qualified immunity analysis. And it's not a pure question of law. Simply saying you accept the facts, but then arguing the facts with the inferences toward yourself, it doesn't jive with what we are looking at on interlocutory appeal. It's noteworthy, the district court even noted, this doesn't mean that they're definitively not entitled to qualified immunity. What they noted was, they just want some facts determined by the jury, and then they very well could be entitled to qualified immunity. We're not at the end. So, there is still a chance that the district court awards qualified immunity to the defendant. And for those reasons, we would request the court affirm the district court's holding, and unless there's any other questions. Thank you. Thank you, Judge. Mr. Overholtz, I think you ran out of time. You can have a little extra time in rebuttal. Thank you. Counsel has failed to identify a clearly established case that would put Lieutenant Lee on notice that what he did in that split second after the car hit the police car, that what he did was clearly unconstitutional. There is jurisdiction in this case. The district court simply got the law wrong when it determined that he had to know instantaneously. In that split second, he had to stop and reassess. Brummett says he didn't have to do that, and he didn't. For that reason, at a minimum, he is entitled to qualified immunity. Thank you. Thank you. Thanks to both counsel. The case is taken under advisement, and that concludes our calendar for today. The court will be in recess.